## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**SHARI BARBER,**

**Plaintiff,**

**v.**                                                              **Case No: 6:20-cv-1222-LRH**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

### MEMORANDUM OF DECISION[1]

Shari Barber ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits.   (Doc. 1).   Claimant raises two arguments challenging the Commissioner's final decision, and based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings.   (Doc. 17, at 9, 22, 32).   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed.   (*Id.* at 32).   For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

_____

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.   *See* Docs. 12, 14-15.

## I.      PROCEDURAL HISTORY.

On January 16, 2018, Claimant filed an application for disability insurance benefits, alleging a disability onset date of October 11, 2017.  (R. 85, 220-26).  Claimant's application was denied initially and on reconsideration, and she requested a hearing before an ALJ.  (R. 63-84, 87-108, 129-31).  A hearing was held before the ALJ on September 20, 2019, at which Claimant was represented by an attorney.  (R. 31-62).  Claimant and a vocational expert ("VE") testified at the hearing.  (*Id.*).

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.  (R. 7-29).  Claimant sought review of the ALJ's decision by the Appeals Council.  (R. 217-19).  On May 13, 2020, the Appeals Council denied the request for review.  (R. 1-6). Claimant now seeks review of the final decision of the Commissioner by this Court.  (Doc. 1).

## II.      THE ALJ'S DECISION.[2]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).  (R. 10-24).[3]  The ALJ found that Claimant last met the insured status requirements of the Social Security Act on December 31, 2018.  (R. 12). The ALJ concluded that Claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 11, 2017 through her date last insured of December 31, 2018.

---

[2] Upon a review of the record, the Court finds that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.  (Doc. 17).  Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy.  *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

(*Id.*).   The ALJ found that Claimant had the following severe impairments: fibromyalgia; degenerative disc disease; knee osteoarthritis; bipolar disorder; depression; and anxiety.   (*Id.*). The ALJ further found that Claimant suffered from three non-severe medically determinable impairments:   gastroparesis; hypertension; and hyperlipidemia.   (R. 13).   The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (R. 14).

The ALJ next found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[4]  except:

> occasional climbing, no ladders, ropes, or scaffolds; occasional balance, stoop, and crouch; no kneel or crawl; frequent handling and fingering; must avoid hazards, including heights and moving machinery.   She can understand, remember, and carry out simple, routine, repetitive instructions with occasional interaction with supervisors, co-workers, and the public, and requires low stress jobs, defined as no production rate paced work, only occasional changes in job setting, and only occasional decision-making responsibilities.

(R. 16).

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform past relevant work as a sales clerk.   (R. 22). However, the ALJ found, upon consideration of the claimant's age, education, work experience, and RFC, that there were jobs that existed in significant numbers in the national economy that Claimant could have performed, such as a marker, photocopier operator, and collator operator.   (R. 23).

---

[4]  The social security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

Accordingly, the ALJ concluded that Claimant was not disabled from the alleged disability onset date through the date last insured.   (R. 24).

## III.    STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises two assignments of error: (1) that the ALJ did not offer a sufficient justification for finding the opinion of consultative examiner, Dr. Karen Marrero, M.D., to be only partially persuasive; and (2) that there is an

unresolved conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. 17, at 9, 22).   The Court will address each in turn.

    A.   Dr. Marrero's Opinion.

        The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments."   *Lewis*, 125 F.3d at 1440.   In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.   20 C.F.R. § 404.1545(a)(3).

        Claimant filed her application for disability insurance benefits on January 16, 2018.   (R. 85, 220-26).   Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.   When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.   The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).   Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship;

extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id.* § 404.1520c(c).

Pursuant to the new regulations, the Commissioner is not required to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)). *See also Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-Orl-PDB, 2020 WL 5810273, at *5 (M.D. Fla. Sept. 30, 2020) (finding no error where ALJ did not specifically address in the decision any factors other than supportability and consistency). "Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

    i.    *What did the ALJ Consider?*

Before addressing the weight the ALJ afforded to Dr. Marrero's opinion, the Court finds it appropriate to summarize all of the evidence the ALJ considered in assessing Claimant's RFC. (*See* R. 17-19). The ALJ first recounted Claimant's hearing testimony concerning her physical impairments as follows:

The claimant testified at the hearing she is unable to work because of chronic pain she experiences primarily from fibromyalgia. She stated she has memory loss, feels like she is in a fog, and has sensitivity to heat and cold. She stated she was seen at the Mayo Clinic in 2017 and was diagnosed with fibromyalgia and rheumatoid arthritis. She testified she experiences back pain, knee pain, and stiffness in her hands. She said she has trouble using zippers and writing, and once a week her knuckles are painful to the point of having difficulty gripping. She said she has pain with reaching. With reference to her knees, she said she had physical therapy in 2014, and one recent injection in her right knee. She said the right knee is more painful than the left. She said her knees swell and she has to elevate them. She reported back pain but no injections or surgery. She said she uses heat and stretching for her pain as well as over the counter medication for pain, which does not help. She testified to having no medication side effects, but noted having "fibro fog." She testified to having difficulty sleeping. She said she tried several medications for fibromyalgia without success, and started low-dose Naltroxone from rheumatology 3 weeks ago. The claimant said her conditions limit her to lifting and carrying a half gallon, walking for up to 15 minutes, standing for up to 5 minutes due to knee pain and numbness in her legs, and sitting for 30 minutes. The claimant testified she has trouble bending down to the floor.

(R. 17). The ALJ then went on to consider the medical evidence of record. (R. 18-19). For example, the ALJ considered records from Claimant's September 2017 visit to her primary care provider, to whom she reported knee and back pain. (R. 18) (citing Exhibit 4F/1).[5] The ALJ also noted the findings from Claimant's physical examination during that visit, which indicated no abdominal tenderness, normal findings in her extremities, and full range of motion in Claimant's shoulders, hips, and knees. (*Id.*) (citing Exhibit 4F/1-2). The ALJ indicated that Claimant was prescribed medication and encouraged to increase physical activity daily. (*Id.*). These findings are supported by the records cited by the ALJ. (R. 460-61).

---

[5] The September 18, 2017 primary care visit occurred prior to Claimant's alleged onset date. *See* R. 220. However, "[c]ourts within the Eleventh Circuit have found pre-onset date evidence to be significant so long as such evidence is: 1) within close proximity to the onset date; and 2) relevant to a claimant's impairments." *Garrett v. Comm'r of Soc. Sec.*, No. 6:16-cv-1516-Orl-41GJK, 2017 WL 1460733, at *3 (M.D. Fla. Mar. 15, 2017), *report and recommendation adopted*, No. 6:16-cv-1516-Orl-41GJK, 2017 WL 1438321 (M.D. Fla. Apr. 24, 2017). Here, the primary care visit occurred just under one month before Claimant's alleged onset, and the records from the visit are relevant to the ALJ's analysis of her claimed physical impairments. Moreover, Claimant has not objected to the ALJ's consideration of evidence prior to her alleged onset date. *See* Doc. 17.

The ALJ then considered records from the Claimant's December 2017 evaluation at the Mayo Clinic, which indicated that Claimant experienced pain mainly in her back, legs, and knees, with stiffness in the morning and worsening pain by the end of the day, but that she had normal strength and no swelling.  (R. 18) (citing Exhibit 5F).  The record supports these findings.  (R. 471-74).  The ALJ also cited to records from Claimant's February 2018 visit to the Mayo Clinic showing that Claimant tested positive for rheumatoid factor but had no sign of synovitis, had multicompartmental arthritic changes in her knees and mild bilateral sacroiliac joint osteoarthritis, had full range of motion in all joints, and discussed with her doctor the possibility of taking medications for her fibromyalgia.  (*Id.*) (citing Exhibit 5F).  The ALJ also noted that Claimant's pain medicine evaluation at the Mayo Clinic revealed she had pain with end-range motion in her left knee but 5/5 strength in her lower extremities and intact sensation, no tenderness in her lumbar spine, and normal gait.  (*Id.*) (citing Exhibit 5F).   Again, these findings are supported by the record. (R. 469; 476-77).

The ALJ next considered the findings from Claimant's left knee MRI in May 2018, which again are supported by the records to which she cites.  *See* R. 518.  The ALJ recounted that the MRI revealed 3-compartmental chondromalacia with osteoarthritis and meniscal free edge macerations and no erosion.  (R. 18) (citing Exhibit 7F/14, 20).  Claimant's rheumatologist indicated there were no findings to support an inflammatory arthritis.  (*Id.*) (citing Exhibit 7F/14).

The ALJ also summarized Dr. Marrero's findings from her internal medicine consultative examination of Claimant as follows:

> The claimant appeared to be in pain as she ambulated and got on and off the examination table.  She had decreased range of motion in her cervical and lumbar spine and knees.  Otherwise, she had full range of motion.  There was lumbar paraspinal spasms noted.  She reported pain in her shoulders when raising them overhead, but had full range of motion in her shoulders.  Dr. Marrero indicated she had over 10 positive fibromyalgia tender points.  The claimant was able to squat and

heel-toe walk with difficulty.   Her gait was not antalgic.   She was briefly able to stand on her heels and toes.   She had +5/5 strength in her extremities and in handgrip.   She had normal sensation and deep tendon reflexes.

(R. 18-19) (citing Exhibit 6F).   The record reveals that the ALJ accurately recounted Dr. Marrero's findings.   (R. 498-99; 501).

Additionally, the ALJ considered records of Claimant's orthopedic visit in July 2018.   (R. 19).   The ALJ noted that Claimant reported an injection of her left knee had not helped, and that she felt sick for two years, had no energy, and could barely walk.   (*Id.*) (citing Exhibit 10F/5).   The ALJ further noted that Claimant's provider indicated Claimant's left knee MRI showed some degenerative changes but that there was no surgical problem, and x-rays taken at the visit showed "nothing severe."   (*Id.*) (citing Exhibit 10F/5).   The ALJ stated that an MRI taken in July 2018 of Claimant's right knee showed subluxation of the medial meniscus with resultant bone-to-bone articulation medially and small joint effusion with patella plica, but Claimant's orthopedic physician found that x-rays did not show bone-on-bone, and her knees did not need to be replaced.   (*Id.*) (citing Exhibits 12F, 13F).   The ALJ's findings are supported by the records she cited.   (R. 565, 592, 594).

The ALJ further considered medical evidence beyond Claimant's date last insured.   (R. 19).[6]   For example, the ALJ noted that Claimant's August 2019 rheumatology visit shows she was being prescribed Naltrexone and was advised to engage in an exercise routine, ideally tai chi.   (*Id.*) (citing Exhibit 21F/4).   Moreover, the ALJ cited to Claimant's physical examination findings from

---

[6] "Evidence post-dating an individual's insured status may be relevant and properly considered if it bears 'upon the severity of the claimant's condition before the expiration of his or her insured status.'" *Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, at *2 (M.D. Fla. Sept. 17, 2008) (quoting *Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir.1984)).   Here, the evidence beyond Claimant's date last insured that the ALJ considered bears upon the severity of Claimant's physical impairments.   Moreover, Claimant has not objected to the ALJ's consideration of evidence beyond her date last insured.   *See* Doc. 17.

that same rheumatology visit, which showed that Claimant had mild crepitus but full range of motion in her knees; some limited range of motion in her thoracic and lumbar spine; mildly limited range of motion in her cervical spine without paraspinal tenderness; normal motor strength and tone; full range of motion in her extremities; and multiple trigger points.  (*Id.*).  Once again, the record supports these findings.   (R. 717-18).

> ii.     *The Weight Afforded to Dr. Marerro's Opinion*

Turning now to Claimant's first assignment of error, Claimant takes issue with the ALJ's finding that the opinion of Dr. Marerro – a consultative examiner – was only partially persuasive. Upon a musculoskeletal examination of Claimant, Dr. Marrero recounted the following findings:

> Decreased ROM [range of motion] of cervical/lumbar spine and knees; otherwise full ROM (see ROM Report Form).   Pain of the shoulders when raising arms over the head.   Lumbar paravertebral spasms.   No joint deformity, swelling, or warmth. No clubbing, cyanosis, or edema.   Negative straight leg raise test.   Able to squat with difficulty.   Over 10 positive fibromyalgia tender trigger points.

(R. 498).    On neurological examination, Dr. Marrero found that Claimant did not walk with an assistive device; had a non-antalgic gait, with the ability to briefly stand on heels/toes; had intact coordination with regard to finger-to-nose and manual dexterity, and performed the heel-toe walk with difficulty due to joint pain; had intact sensation to pinprick, light touch, vibration, and position; +5/5 motor strength proximally, distally, and in her grip; and exhibited +2 in deep tendon reflexes. (*Id.*).   Dr. Marrero confirmed Claimant's diagnosis of, among other things, fibromyalgia.   (R. 498).    Based on her examination findings, Dr. Marrero opined that Claimant was expected to bend, stand, and walk three to four hours out of an eight-hour workday with frequent breaks; could otherwise sit, carry/lift less than 10 pounds, handle objects, hear, speak, write, and travel with regular breaks.  (R. 499).   Dr. Marrero further opined that Claimant should avoid repetitive

movements. (*Id.*). With respect to Claimant's mental limitations, Dr. Marrero stated that Claimant could perform work-related mental activities given simple instructions. (*Id.*).

In evaluating Dr. Marrero's opinion, the ALJ stated as follows:

> After the internal medicine consultative examination, Dr. Marrero opined the claimant could bend, stand, and walk for 3 to 4 hours out of an 8-hour workday with frequent breaks, and could sit, carry/lift less than 10 pounds, handle objects, hear, speak, write, and travel with regular breaks (Exhibit 6F). Dr. Marrero said the claimant should avoid repetitive movements and could perform simple instructions. I find the opinion partially persuasive as it is partially supported by examination findings including that the claimant had difficulty in getting on and off the examination table, had decreased range of motion in her spine and knees, lumbar paraspinal spasms, shoulder pain, and over 10 fibromyalgia tender points. However, it appears to limit the claimant to close to sedentary work, which I find too restrictive. The opinion seems to be too limiting in that the claimant had a non-antalgic gait, +5/5 strength in her extremities, and normal sensation. The opinion is also not entirely consistent with her other medical records indicating she did not have tenderness in her shoulders and had full range of motion in her knees during primary care visits (Exhibit 4F/2, 4, 7). Such a limiting opinion is also not entirely consistent with Mayo Clinic examination findings, for example in February 2018 when the claimant had only left knee pain with end-range flexion, but had no lumbar tenderness or positive lumbar findings (Exhibit 5F/2). Additionally, an orthopedic visit in July 2018 shows a healthy female with no effusion in her knees, and little crepitus with flexion and extension on the left, but not on the right, which mild findings do not support the claimant is limited to standing and walking at the sedentary exertional level (Exhibit 10F/5). Therefore, Dr. Marrero's opinion is partially persuasive but when weighed with her medical evidence, the overall record supports the claimant can stand or walk at the light exertional level. The claimant's +5/5 strength during Dr. Marrero's examination and at the Mayo Clinic support she is able to lift and carry up to 10 pounds frequently, and up to 20 pounds occasionally.

(R. 20-21).

Claimant makes two arguments with regard to the ALJ's evaluation of Dr. Marrero's opinion, which the Court will address in the order presented by Claimant.

### iii.    Whether the ALJ overlooked evidence in support of Dr. Marrero's findings

First, Claimant argues that the ALJ "cherry-picked a handful of examination findings in the record, but overlooked a larger body of evidence that supported Dr. Marrero's findings." (Doc. 17, at 10). However, as to this "larger body of evidence," Claimant only points to two items: (1)

- 11 -

imaging records which she claims show that Claimant "had significant osteoarthritis in her left knee and severe degenerative changes with bone-on-bone articulation in her right knee"; and (2) Dr. Marrero's findings that Claimant had a reduced range of motion in her cervical spine and multiple tender trigger points, which Claimant argues show that Dr. Marrero correctly concluded Claimant was limited to lifting less than 10 pounds.  (*Id.*, citing R. 498, 592, 594).  Claimant contends that the ALJ "focused on a handful of examination findings but did not consider other probative evidence" that supported Dr. Marrero's conclusions.  (*Id.*, at 11).

Claimant's first argument is unpersuasive.  To begin, the ALJ did in fact articulate her consideration of Dr. Marrero's findings that Claimant had a reduced range of motion in her spine and multiple tender trigger points on examination.  (R. 20-21) ("I find [Dr. Marrero's] opinion partially persuasive as it is partially supported by examination findings including that the claimant had… *decreased range of motion in her spine*… and *over 10 fibromyalgia tender points*.") (emphasis added).  On the other hand, Claimant is correct that the ALJ did not consider the imaging records in her evaluation of Dr. Marrero's opinion.[7]  *See id*.  However, the ALJ did not err by failing to do so because, as discussed above, in making the RFC determination the ALJ carefully and thoroughly discussed a number of medical records—including the imaging records Claimant references—and addressed the Claimant's condition as a whole.  (R. 17-19).  *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 601-02[8] (finding no error where ALJ failed to consider other evidence favorable to claimant where it was clear that ALJ considered claimant's condition as a whole); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (alterations in original) ("In all

---

[7] Although, as previously discussed, the ALJ did consider these records in a separate section of her decision. *See* R. 19.

[8] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision…is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'") (quoting *Foote*, 67 F.3d at 1562).   Accordingly, Claimant's argument that the ALJ cherry-picked evidence is unpersuasive, particularly where the ALJ did, in fact, consider all of the identified evidence when fashioning Claimant's RFC.  *See Marcisz v. Comm'r of Soc. Sec.*, No. 6:18-cv-2088-Orl-37LRH, 2019 WL 6843045, at *4 (M.D. Fla. Nov. 25, 2019), *report and recommendation adopted*, No. 6:18-cv-2088-Orl-37LRH, 2019 WL 6842245 (M.D. Fla. Dec. 16, 2019) (finding no error where ALJ did not specifically address two treatment notes when considering the weight to afford a treating physician's opinion, but where ALJ provided a detailed discussion of the other treatment notes and "thoroughly considered the evidence from the relevant period when weighing [the physician's] opinion"); *Sullivan v. Comm'r of Soc. Sec.*, No. 5:15-cv-56-Oc-DNF, 2016 WL 1068481, at *5 (M.D. Fla. Mar. 18, 2016) ("[T]he ALJ did not err by failing to discuss every aspect of the treatment records from Dr. Singh as long as the Court can, as is the case here, determine that the ALJ considered the Plaintiff's medical condition as a whole." (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014))).

More importantly, the ALJ's conclusion that Dr. Marrero's opinion is only partially persuasive is supported by substantial evidence.   Again, the regulations that apply to Claimant's claim, and the caselaw interpreting those regulations, only require that the ALJ explain how she considered the supportability and consistency of each medical opinion.   20 C.F.R. § 404.1520c; *see Freyhagen*, 2019 WL 4686800, at *2.   With respect to the opinion's supportability, the ALJ noted that she found Dr. Marrero's opinion partially persuasive, "as it is *partially supported by* examination findings including that the claimant had difficulty in getting on and off the examination

table, had decreased range of motion in her spine and knees, lumbar paraspinal spasms, shoulder pain, and over 10 fibromyalgia tender points."  (R. 20-21) (emphasis added).   Moreover, the ALJ explained that Dr. Marrero's opinion limiting Claimant to sedentary-like work[9] was too restrictive, because Dr. Marrero's examination showed that Claimant had a non-antalgic gait, +5/5 strength in her extremities, and normal sensation—findings that would contradict such restrictions.   The ALJ's explanation is supported by the record evidence.   (R. 498).   Thus, the ALJ found that Dr. Marrero's examination findings did not adequately support her own opinion about Claimant's limitations, and the ALJ's determination on this point is supported by substantial evidence.   *See Wozniczka v. Comm'r of Soc. Sec.*, No. 6:20-CV-909-EJK, 2021 WL 3406272, at *3 (M.D. Fla. Aug. 4, 2021) ("The Court finds that the ALJ's analysis complies with the new regulations because the ALJ adequately articulated the reasons for finding lack of supportability and consistency in the record with Dr. McGraw's Opinion.").

    Additionally, the ALJ articulated her consideration of the opinion's consistency with the other medical evidence of record.   For example, the ALJ explained that Dr. Marrero's opinion was not entirely consistent with other medical records from Claimant's primary care physician indicating that Claimant did not have tenderness in her shoulders and had a full range of motion in her knees. (R. 21).   The ALJ also cited to records from Claimant's February 2018 examination at the Mayo Clinic, which showed that Claimant had only left knee pain with end-range flexion but no lumbar tenderness or positive lumbar findings, as well as to records from Claimant's July 2018 orthopedic visit reporting that Claimant was healthy, had no effusion in her knees, and little crepitus with

_____

[9] The Social Security regulations define "sedentary work" as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."   20 C.F.R. § 404.1567(a).

flexion and extension on the left but not on the right.   (*Id.*).   Lastly, the ALJ noted that Claimant's Mayo Clinic examination revealed that she exhibited +5/5 strength.   (*Id.*).   The record evidence supports the ALJ's conclusions.   (R. 461, 463, 466, 469, 565).   Accordingly, the ALJ's determinations with respect to the consistency and supportability of Dr. Marrero's opinion are supported by substantial evidence, and Claimant's first argument of error is unavailing.   *See Wozniczka*, 2021 WL 3406272, at *3.

> iv.   *Whether the ALJ improperly focused on objective evidence with respect to Claimant's fibromyalgia*

Claimant's second argument with respect to Dr. Marrero's opinion is that "the ALJ's focus on objective examination findings fails to account for Dr. Marrero's determination that Plaintiff suffers from fibromyalgia."   (Doc. 17, at 11).   Claimant points to Dr. Marrero's finding that Claimant had over ten positive fibromyalgia tender points and to records from her primary care doctor showing that Claimant reported trying three different medications for her fibromyalgia pain without any improvement.   (*Id.*; *see* R. 498, 688).   Claimant also cites *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010) for the proposition that "a claimant's complaints of fibromyalgia pain can be considered reliable if the evidence shows that claimant 'made numerous visits to her doctors over the course of several years, underwent numerous diagnostic tests, and was prescribed numerous medications.'"   (Doc. 17, at 11).   Thus, Claimant reasons, her "severe impairment of fibromyalgia supports Dr. Marrero's finding that she has significant functional limitations even in the absence of other objective findings."   (*Id.*).

At the outset, the Court notes that the Eleventh Circuit has recognized fibromyalgia is a unique condition that is often characterized by a lack of objective findings.   *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("[Fibromyalgia]'s hallmark is…a lack of objective

evidence"); *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (alteration in original) ("Fibromyalgia 'often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms.'") (quoting *Moore*, 405 F.3d at 1211).   Thus, ordinarily, it is improper for an ALJ to focus on the absence of objective findings in assessing the impairments of a claimant with fibromyalgia.   *See Moore*, 405 F.3d at 1211.   However, even in the case of fibromyalgia, an ALJ does not err in rejecting a medical opinion where the ALJ "adequately articulate[s] specific justification" for discounting the opinion.   *Id.*, at 1212; *see also Peters v. Astrue*, 232 F. App'x 866, 872 (11th Cir. 2007) (finding that substantial evidence supported ALJ's decision that claimant's fibromyalgia was not disabling where the ALJ gave "specific, cogent, and credible reasons for discounting the conclusions of [claimant's] treating physicians").   And where the ALJ's decision to discount a medical opinion is not based on the lack of objective evidence in support thereof, the ALJ has not erred.   *See Riley v. Astrue*, No. 6:11-cv-1437-ORL-JRK, 2012 WL 3522640, at *6 (M.D. Fla. Aug. 14, 2012) (rejecting claimant's argument relying on a diagnosis of fibromyalgia and noting that fibromyalgia typically does not result in any objective findings, where the ALJ's decision to discount the treatment physician's opinion was not based on either a lack of objective findings or on the basis of claimant's subjective complaints of pain).[10]

Here, the ALJ did not base her determination that Dr. Marrero's opinion was only partially persuasive on the lack of objective findings in support of her opinion.   Nowhere in the decision did the ALJ state that her determination that Dr. Marrero's opinion was only partially persuasive was

---

[10] The Court notes that the above-cited line of cases considered whether it was error for the ALJ to discount the opinions of treating physicians, not of a consultative examiner, as is the case here.   However, under the regulations that were in effect for claims filed prior to March 27, 2017, a treating physician's opinion was afforded *more* weight than the opinion of a non-treating physician such as a consultative examiner.   20 CFR § 404.1527(d)(5).   *See also Hoffman v. Astrue*, 259 F. App'x 213, 218 (11th Cir. 2007) ("[A]s a consulting examiner, McArthur's opinion was not entitled to the same weight as the opinion of [claimant's] treating physicians.").   Thus, while those regulations do not govern the outcome of the present matter, the reasoning behind this line of cases is both instructive and persuasive.

due in any part to the lack of objective findings in support.   *See* R. 20-21.   To the contrary, the ALJ specifically relied on Dr. Marrero's notation that Claimant exhibited fibromyalgia tender trigger points—one objective metric of fibromyalgia—in finding some support for her opinion.   *Id.*; *see also Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1187 (N.D. Ala. 2006) ("In spite of its illusive nature, the presence of fibromyalgia can be objectively verified in some cases… there are tender areas, or 'trigger points,' which are well defined and cause pain upon palpitation.").   Rather, as discussed above, the ALJ relied on Dr. Marrero's examination findings and on the other medical evidence of record, which she found rendered Dr. Marrero's conclusions too restrictive.   (R. 20-21).   Because the ALJ articulated specific reasons, supported by the record, for finding Dr. Marrero's opinion only partially persuasive, the ALJ did not err.[11]   *See Riley*, 2012 WL 3522640, at *5 (concluding that ALJ properly discounted the "severe limitations" imposed by claimant's treating physician because they were not supported by the record evidence, including the physician's own records, which showed that claimant with fibromyalgia had stable joints, no pain on joint motion, and full range of motion in the spine and extremities on examination).

In the Joint Memorandum, Claimant also points to additional evidence in the record to argue that her severe impairment of fibromyalgia supports Dr. Marrero's findings.   First, Claimant points to Dr. Marrero's finding that Claimant had over ten positive fibromyalgia tender points.   (Doc. 17, at 11).   However, as the Court has already noted, the ALJ explicitly referenced and considered this finding.   (R. 20-21).   Second, Claimant cites to medical records indicating that medication failed to improve Claimant's fibromyalgia pain.   (Doc. 17, at 11) (citing R. 688).   Although the ALJ did

---

[11] The Court finds Claimant's reliance on *Somogy* to be misplaced as that decision is factually distinguishable from the present dispute.   In *Somogy*, the Eleventh Circuit found reversible error where the ALJ rejected a medical opinion on the grounds that it was based primarily on the claimant's subjective complaints rather than objective medical evidence.   *Somogy*, 366 F. App'x at 64.   As explained above, the ALJ made no such error here.   *See* R. 20-21.

not discuss this evidence in her evaluation of Dr. Marrero's opinion, the ALJ did not err in declining to do so, because it is clear that the ALJ considered Claimant's impairment of fibromyalgia as a whole. [12] For example, with respect to the RFC determination, the ALJ expressly considered Claimant's hearing testimony regarding her fibromyalgia pain and treatment thereof, treatment notes discussing the possibility of starting Claimant on fibromyalgia medications, Claimant's eventual treatment with medications for fibromyalgia, and Claimant's report to her psychiatrist that the medications did not control 100% of her fibromyalgia symptoms.  (R. 17-20).  Moreover, in concluding that Claimant retains the ability to perform a reduced range of light work, the ALJ expressly accounted for her fibromyalgia pain.  *See* R. 22 ("[Claimant's] fibromyalgia pain…support[s] a reduction to the light exertional level with no more than occasional posturals."). Thus, the Court finds Claimant's second argument unavailing.  *See Sims*, 706 F. App'x at 601-02; *Dyer v. Barnhart*, 395 F.3d at 1211.

In sum, the ALJ's findings as to Dr. Marrero's opinion are supported by substantial evidence, as the ALJ adequately articulated her consideration of the opinion's supportability and consistency pursuant to the new regulations.  20 C.F.R. § 404.1520c; *see Wozniczka*, 2021 WL 3406272, at *3. Thus, the Court rejects Claimant's first assignment of error.

B.  Conflict between VE Testimony and DOT.

At step five of the sequential evaluation process, the Commissioner bears the burden of proving that other jobs exist in the national economy which, given the claimant's age, education, and RFC, she can perform despite her impairments.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ may consider "both jobs data drawn from the DOT as well as from the

---

[12] Elsewhere in the decision, the ALJ considered Claimant's testimony that she tried several medications for fibromyalgia without success.  (R. 17).

testimony of the VE in making this determination." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018).

> Social Security Ruling 00-4p ("SSR 00-4p") provides, in pertinent part, as follows:
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.   When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.   At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2.[13]   The Eleventh Circuit has held that the ALJ has a duty to resolve any apparent conflicts between a VE's testimony and the DOT, even if the VE does not affirmatively state that such a conflict exists.   *See Washington*, 906 F.3d at 1356 (finding that pursuant to SSR 00-4p, "ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them.   This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT."). A conflict is "apparent" if it is "reasonably ascertainable or evident" from a comparison of the VE's testimony and the DOT.   *Id.* at 1365-66.

The ALJ included within the RFC determination that Claimant was limited to light work with certain additional functional limitations, and that Claimant was further limited to jobs that would require her to understand, remember, and carry out simple, routine, and repetitive instructions.   (R. 22).   In response to a hypothetical question reflecting the same limitations, the

---

[13] SSRs are binding on the SSA, but they are not binding on this Court.   *See Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) ("Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.   Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." (citing *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981))).

VE testified that a person with those limitations could work as a marker, a photocopy machine operator, or a collator operator.   (R. 59).[14]

According to the DOT, all three of these jobs have a reasoning level of two.   *See* DOT 209.587-034 (marker), *available at* 1991 WL 671802; DOT 207.685-014 (photocopying machine operator), *available at* 1991 WL 671745; DOT 208.685-010 (collator operator), *available at* 1991 WL 671753.   Pursuant to the DOT, jobs with a reasoning level of two require an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and to "[d]eal with problems involving a few concrete variables in or from standardized situations."   DOT Appendix C, *available at* 1991 WL 688702.

Here, Claimant argues that there is an apparent conflict between the VE's testimony and the DOT, in that an individual limited to jobs with "simple, routine, and repetitive" instructions would not be capable of performing jobs requiring an employee to carry out "detailed but uninvolved" instructions, *i.e.*, that limiting an individual to "simple" instructions is inconsistent with a reasoning level of two.   (Doc. 17, at 23-24).[15]   The Commissioner disagrees.   (*Id.*, at 28).

In a recently published decision, the Eleventh Circuit resolved this issue in favor of the Commissioner's position.   *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315 (11th Cir. 2021).   The Court in *Buckwalter*, following the reasoning of the Eighth and Fourth Circuits, found:

---

[14] In posing hypothetical questions to the VE, the ALJ specifically asked the VE whether her testimony was consistent with the DOT.   (R. 60).   The VE responded in the affirmative, with the exception of absences from work, which was contingent on her training, education, and experience.   (R. 61).

[15] Claimant also mentions, in passing, that there is a "direct conflict" between the VE's testimony and the DOT.   (Doc. 17, at 23).   However, Claimant presents no further argument on this point, nor any legal authority in support.   To the contrary, at the conclusion of this portion of the Joint Memorandum, Claimant asks the Court "to rule that there was an apparent, unresolved conflict between the VE's testimony that the jobs of marker, photocopy machine operator, and collator operator are simple and the DOT's assertion that those jobs require the ability to understand at least 'detailed but uninvolved' instructions."   (*Id.*, at 26).   Thus, to the extent Claimant is attempting to argue a direct conflict, that argument has been waived.   *See generally Allen v. Comm'r of Soc. Sec.*, No. 6:18-cv-1806-Orl-DCI, 2020 WL 263665 (M.D. Fla. Jan. 17, 2020).

> There is not an apparent conflict here between [the claimant]'s RFC, which limits her to the ability to "understand, carry-out, and remember simple instructions," and the identified positions with a reasoning level of two.   While it is a close question, the two terms can be readily reconciled, so we follow the Fourth and Eighth Circuits and hold that there is no apparent conflict.

*Id.*, at 1323.   The Eleventh Circuit noted that although there is "potentially tension between [the claimant]'s limitations to simple instructions and reasoning level two, that tension does not rise to the level of an 'apparent' conflict."   *Id.* (citing *Washington*, 906 F.3d at 1366).   The *Buckwalter* Court emphasized that the DOT's definition of reasoning level two specifically includes the word "uninvolved," which the dictionary defines as "meaning not 'marked by extreme and often needless or excessive complexity.'"   *Id.* (internal citations omitted).

Although the issue in *Buckwalter* was the claimant's limitation to "simple instructions," the Eleventh Circuit relied on the reasoning of the Fourth and Eighth Circuits, both of which considered limitations to "simple, routine, and repetitive" work—the precise language at issue here.   *Id.*, at 1323-24; *see Lawrence v. Saul*, 941 F.3d 140, 143-44 (4th Cir. 2019) (finding no conflict between the ALJ's RFC finding that the claimant could perform jobs limited to "simple, routine repetitive tasks of unskilled work" and reasoning level two's "notions of detailed but uninvolved" instructions); *Moore v. Astrue*, 623 F.3d 599, 602, 604-06 (8th Cir. 2010) (finding that the ALJ's determination that the claimant was "capable of performing basic mental demands of simple, routine, and repetitive work activity at the unskilled task level" was not inconsistent with occupations at the DOT level two reasoning level).   The Court finds the reasoning of *Buckwalter*, and in particular its reliance on decisions from other Circuits, both persuasive and determinative of the present dispute.

Upon consideration of the above-cited binding authority from this Circuit,[16] the Court agrees with the Commissioner that no apparent conflict exists between the limitation to jobs with simple, routine, and repetitive instructions and an occupation requiring a reasoning level of two. Accordingly, the Court rejects Claimant's second assignment of error.

## V.     CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1.      The final decision of the Commissioner is **AFFIRMED.**

2.      The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on August 30, 2021.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[16] *See also Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (noting that jobs with a reasoning level of two are not inconsistent with claimant's RFC, which limited him to simple, routine, and repetitive tasks).